UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES | : | 3:15 CR 142 (JAM) |
| | : | |
| V. | : | |
| | : | |
| ROMANE MCKENZIE | : | OCTOBER 11, 2016 |

**DEFENDANT'S SENTENCING MEMORANDUM**

The defendant, Romane McKenzie, respectfully files his sentencing memorandum to assist the Court in arriving at a sentence that is sufficient, but not greater than necessary, to comply with the sentencing factors set forth in 18 U.S.C. § 3553(a). On August 2, 2016, Romane pleaded guilty to count one of the indictment, which charged him with sex trafficking of a minor in violation of 18 U.S.C. § 1591(a)(1), (b)(2) and (c). He is scheduled to be sentenced on October 25.

**I.    Personal History**

Romane is twenty-four years old. The conduct for which he has been convicted occurred when he was twenty-two. Romane was born in Jamaica. Like many other people who find themselves in the unenviable position of being sentenced in a criminal case, Romane was abandoned by a parent at a very young age. In his case, it was his mother, who left the family home when Romane was only four years old. This devastating event has understandably had a lasting impact on Romane. Romane was fortunate, however, to be raised in a stable home by his father and stepmother after he

emigrated from Jamaica to the United States at age 10. Romane's mother stayed in Jamaica and passed away two years ago due to complications from diabetes.

Romane graduated from Weaver High School in 2011. He planned to become a medical assistant and he attended the Sawyer School in Hartford for one month before it closed. Romane also worked at various jobs between 2011 and 2013, primarily through a temp agency. His father described him as "hard working" and Romane's friend, Takisha Walker, finds him to be "kind and generous." (PSR ¶¶ 67-68).

## II.     Sentencing Range

The parties agree that a sentence of 120 months' incarceration is appropriate in this case. The plea agreement also contains an appeal waiver in which Romane has agreed not to appeal or collaterally attack a sentence that does not exceed 120 months. (Plea Agreement at 5-6) (Doc. 36).

The parties also agree that the base offense level is 30 pursuant to U.S.S.G. § 2G1.3(a)(2). (PSR ¶ 39). Two points are added under § 2G1.3(b)(3)(B) for enticing, encouraging, offering or soliciting a person to engage in prohibited sexual conduct with a minor; and two points are added under § 2G1.3(b)(4)(A) because the offense involved the commission of a sex act or sexual contact. (See PSR ¶¶ 40-41). After three points are deducted for acceptance of responsibility, the total offense level is 31. (PSR ¶ 49).

Romane's criminal history category is II. (Plea Agreement at 5 (Doc. 36); PSR ¶ 56). This score is based on a misdemeanor motor vehicle conviction for evading responsibility where he was sentenced to 90 days, execution suspended, and one year

of probation (one point); a misdemeanor motor vehicle conviction for operation under suspension where he was sentenced to 90 days, execution suspended, and a one year conditional discharge (one point); and two points for committing the instant offense while on probation. (PSR ¶¶ 52-53, 55). The presumptive guidelines range for offense level 31 and CHC II is 121 to 151 months. (PSR ¶¶ 3, 88). The mandatory minimum sentence is 120 months, which, as noted above, the parties have agreed is the appropriate sentence. (18 U.S.C. § 1591(b)(2); PSR ¶¶ 3, 109). There is also a mandatory minimum term of supervised release of five years with a maximum of life. (18 U.S.C. § 3583(k); PSR ¶ 89).

### III.   Applicable Law

Because the Sentencing Guidelines are no longer mandatory, the District Court must consider the Guidelines as well as the other factors set forth in 18 U.S.C. § 3553(a) when determining a sentence that is "sufficient, but not greater than necessary" to meet the purposes of federal sentencing. United States v. Booker, 543 U.S. 220, 258 (2005); United States v. Crosby, 397 F.3d 103, 110-14 (2d Cir. 2005). A sentence that is "sufficient, but not greater than necessary" under 18 U.S.C. § 3553(a) is the lowest possible sentence that accounts for all of the relevant statutory factors. Thus, if a District Court believes a lower sentence will be as effective as a higher sentence in light of the relevant factors, it must choose the lower sentence. See United States v. Ministro-Tapia, 470 F.3d 137, 142 (2d Cir. 2006) ("if a district court were explicitly to conclude

that two sentences equally served the statutory purpose of § 3553, it could not, consistent with the parsimony clause, impose the higher.")

## IV.  Argument

In light of the parties' agreement that a sentence of 120 months is the appropriate sentence, Romane respectfully asks the Court to impose that sentence, which can be arrived at in either of two ways. The Court can impose a Guidelines sentence if it departs downward from criminal history category II to criminal history category I based on the over-representation of Romane's criminal history. See U.S.S.G. § 4A1.3(b). An offense level of 31 and CHC I yields a Guidelines range of 108 to 135 months. If the Court declines to depart downward on that basis, Romane respectfully asks the Court to impose a non-Guidelines sentence of 120 months, which is only one month below the low end of the range for CHC II.

### A.  A Downward Departure For Over-Represented Criminal History Is Warranted

A horizontal departure under U.S.S.G. § 4A1.3(b) from CHC II to CHC I is warranted because CHC II substantially over-represents the seriousness of Romane's criminal history. The District Court can depart outside the applicable range "if it finds 'an aggravating or mitigating circumstance, of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.'" United States v. Cervantes, 878 F.2d 50, 53 (2d Cir. 1989) (quoting 18 U.S.C. § 3553(b)). "If reliable information indicates that the defendant's criminal history category substantially

4

over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted." U.S.S.G. § 4A1.3(b). "[A] sentencing judge should exercise discretion whenever the judge concludes that the consequences of the mathematical prior-history calculation, prescribed by sections 4A1.1 and 4A1.2, either underrepresent or overrepresent the seriousness of a defendant's prior record." United States v. Rivers, 50 F.3d 1126, 1131 (2d Cir. 1995). "Our Court has also indicated that horizontal CHC departures require particularized consideration of the circumstances of a defendant's case." United States v. Mishoe, 241 F.3d 214, 218 (2d Cir. 2001) (citing Rivers, 50 F.3d at 1130-31). The factors set forth in Mishoe, 241 F.3d at 219 that a court must consider support a downward departure. Those factors include: (1) the amount of drugs involved in the prior offense; (2) the defendant's role in the prior offense; (3) the sentence previously imposed, and; (4) the amount of time previously served compared to the sentencing range called for by placement in CHC II. See id.

      The first Mishoe factor does not apply in this case because the prior cases did not involve drugs. As for the second Mishoe factor, the PSR does not contain the facts of either prior conviction. (PSR ¶¶ 52-53). The third and fourth Mishoe factors are the most important in the present analysis. Romane received suspended sentences in both previous motor vehicle cases. The juxtaposition of the ten year mandatory minimum sentence he faces here demonstrates the tremendous disparity between the prior sentences and the current one. Hypothetically, if Romane had previously received a

thirty-day sentence in one of the previous cases, the mandatory minimum sentence here would be ***120 times greater*** than the previous period of incarceration. The PSR notes that the absence of a previous period of incarceration is one factor for the Court to consider when deciding if a sentence of 120 months is sufficient to achieve the purposes of sentencing. (PSR ¶ 102). Additionally, two of Romane's four criminal history points, which place him in CHC II, are based on his probationary status during the commission of the instant offense. That probation was in effect for only four days. (PSR ¶ 105). If Romane had been arrested five days earlier, he would have two criminal history points instead of four, and consequently be in CHC I. Accordingly, a horizontal departure from CHC II to CHC 1 is warranted.

### B. A Non-Guidelines Sentence Is Warranted

If the Court declines to depart downward for over-represented criminal history, Romane respectfully asks the Court to impose a non-Guidelines sentence only one month less than the low end of the Guidelines range. Such a sentence is appropriate for a number of reasons. First, the government, after investigating the nature and circumstances of this case, agrees that a sentence of 120 months should be imposed. Second, such a sentence is still very severe, particularly for someone so young who has never served a period of incarceration before. Third, no matter what period of incarceration the Court imposes, perhaps the biggest punishment for Romane is his impending deportation following the completion of his sentence. Romane was born in Jamaica and remains a Jamaican citizen. He has lived in the United States legally since

he was a young boy, however. Being banished to Jamaica where he will be separated from his father, sister and stepmother is a very harsh consequence. Fourth, Romane has acknowledged his wrongdoing, accepted responsibility for it, and not tried to shift blame. He will address these factors in greater detail at the sentencing hearing.

Romane is a young man who has learned a very hard lesson from this experience, but it will hopefully be a lesson that serves him well in the future. I have observed Romane to be mild-mannered, soft-spoken, polite and cooperative. He has also become goal-oriented from this experience and wants to learn a trade, such as electrical or heating and air conditioning repair and maintenance while in BOP custody in order to increase his chances of professional success when he is released. (PSR ¶ 77). A non-Guidelines sentence only one month less than the low end of the Guidelines range will be more than sufficient to achieve the goals of sentencing contained in 18 U.S.C. § 3553(a).

Lastly, a non-Guidelines sentence of 120 months is also appropriate given the comparison between Romane's case and that of a similarly situated defendant who was recently sentenced. In <u>United States v. Jordan Anate</u>, 3:15 CR 203 (VLB), the defendant was convicted of the same offense as Romane and sentenced to the mandatory minimum 120 months even though his Guidelines range was 135 to 168 months, which is higher than Romane's Guidelines range even if the Court does not

depart downward. See Anate, 3:15 CR 203 (VLB), Doc. 78 (plea agreement) at 5 and Doc. 88 (Judgment).[1]

### C. Romane Would Benefit From the Residential Drug Abuse Program

Romane respectfully asks the Court to recommend his placement in the 500 hour Residential Drug Abuse Program ("RDAP") pursuant to 18 U.S.C. § 3621. He has used marijuana, "molly" and alcohol in the past. (PSR ¶¶ 12, 72-73). Romane asks for this recommendation even though he recognizes that he will not receive a reduction of his sentence, as most inmates do. Upon information and belief, the RDAP includes a community release component that Romane will not be able to complete due to his expected deportation. Given his inability to complete the entire RDAP program, he will not receive the one year reduction of his sentence that typically occurs upon completion. His desire and willingness to participate in the intensive treatment program

---

[1] Although Romane has received several disciplinary reports since his incarceration nearly two years ago, context is important. (See PSR ¶¶ 4-5). The December 19, 2014 ticket for fighting occurred when Romane was playing cards in the day room of his unit at New Haven Correctional Center. Another inmate objected to Romane sitting in "his" seat. The other inmate threatened Romane and put Romane in the difficult position of having to defend himself. The three tickets that Romane received for being in an "unauthorized area" were because he visited another inmate in the inmate's cell. The ticket for "failure to follow cell compliance" stemmed from Romane's failure to make his bed. The final ticket for "assault on another detainee" occurred when the other detainee made extremely vulgar statements to Romane about Romane's mother performing oral sex on the detainee. The detainee was apparently upset because Romane, who was on kitchen duty at the time, refused to give the inmate an extra tray. All of these tickets have been adjudicated in the prison setting and do not warrant a sentence above ten years.

even though it will not result in his early release demonstrates his maturity and commitment to sobriety and rehabilitation. (See PSR ¶ 75).

### D. Supervised Release

The Court must impose a period of supervised release of five years up to life. 18 U.S.C. § 3583(k); PSR ¶ 89. The plea agreement provides that the government will not seek a period of supervised release greater than ten years and Romane is free to argue for any term of supervised release consistent with law, which in this case is a mandatory minimum of five years. (Plea Agreement at 5, Doc. 36). A five year period of supervised release is appropriate here primarily for two reasons. First, the period of supervised release is academic given the certainty of removal from United States. Because a period beyond five years serves no sentencing purpose, the parsimony clause of 18 U.S.C. § 3553(a) calls for the lowest period consistent with law. Second, assuming for the sake of argument that supervised release is not academic, if Romane successfully completes the first five years, it will be because he is working or going to school, not violating the law and complying with the other conditions of supervised release. A violation past the five year mark is unlikely under this scenario, making continued supervision unnecessary, particularly in light of the parsimony clause.[2]

---

[2] At an annual cost of $4,097.00 for supervision by a probation officer, the last five years of supervised release would cost a total of $20,485 according. (PSR ¶ 96). If Romane completes the first five years of supervised release without a violation, spending more than $20,000 to supervise someone who is unlikely to violate in years six through ten is an inefficient use of scarce judicial resources.

Romane also objects to certain proposed conditions of supervised release contained in the PSR. The parties contemplated seven conditions of supervised release in the plea agreement. (Plea Agreement at 15, Doc. 36). The PSR has proposed several additional conditions, three of which are unwarranted. (PSR ¶ 104). Romane objects to the condition that contemplates polygraph testing. (PSR ¶ 104(3)). Polygraph test results are not admissible in court due to their unreliability. Consequently, a polygraph test result cannot be used as a basis to violate a person's supervised release and it should not be used to impose more restrictive conditions for a person who fails such a test.

Romane also objects to the condition that requires him to "notify third parties of risks that may be occasioned by [his] criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and confirm [his] compliance with such notification requirement." (PSR ¶ 104(4)). Romane will already be required to register as a sex offender pursuant to SORNA, 42 U.S.C. § 16901, *et seq.* (See PSR ¶ 104(2)). Anyone in the world will be able to see where he lives and the nature of his offense merely by checking the Connecticut online sex offender registry. Additional notifications, made by Romane in person, as this proposed condition appears to contemplate, are therefore unnecessary. The personal notification condition is also objectionable due to the vagueness of the term "risks." The proposed condition does not identify these risks in any way, thereby giving a yet-to-be-determined

probation officer unfettered discretion to identify the "risks" and demand that Romane notify an indefinite number of people about the "risks" many years in the future.

Romane also objects to proposed condition six, which precludes his unsupervised association with children under the age of 18, to the extent that it applies to Romane's relatives or any children he may have in the future. (See PSR ¶ 104(6)). Nothing in the offense of conviction suggests that Romane would present a danger to his minor relatives or any children that he has in the future. The offense involved prostitution in a motel setting with an unrelated person, which is not within the class of risks when an adult is supervising a child within his own family. The proposed condition is so broad, and so restrictive in barring Romane from having unsupervised contact with a child, that it would even require him to move out of his own home upon the birth of his own child.

### E. Credit for time served

Romane was arrested on state charges on November 18, 2014. That arrest stemmed from the same conduct as charged in the federal indictment. (PSR ¶ 2). He was held in lieu of bond on those charges until he was discharged to federal authorities on September 9. (Id.) The state case was nolled on August 17, 2016 following Romane's guilty plea in this Court. (See PSR ¶ 59). He therefore asks that the Judgment reflect that the state arrest and period of incarceration was for the same conduct and that the time served in state custody will not be credited against another

sentence. With this information included in the Judgment, the Bureau of Prisons should credit Romane with the period that he spent in state custody.

## V. Conclusion

For the foregoing reasons, Romane McKenzie respectfully asks the Court to impose a sentence of 120 months with five years of supervised release.

**DEFENDANT**
**ROMANE MCKENZIE**

By: *s/ Jeffrey C. Kestenband*
   Jeffrey C. Kestenband
   Fed. Bar No.: ct 19003
   The Kestenband Law Firm LLC
   2389 Main Street
   Glastonbury, CT 06033
   Tel. No.: (860) 659-6540
   Fax No.: (860) 288-5484
   Email:  jkestenband@kestenbandlaw.com

**CERTIFICATION**

This is to certify that the foregoing was filed electronically, on this 11th day of October, 2016. Notice of the filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

*s/ Jeffrey C. Kestenband*
Jeffrey C. Kestenband